Let the injunction be dissolved.

JOHN VAN WINKLE v. ADRIAN VAN HOUTEN et al.

In order to charge legacies on the land and to exempt the personal estate, there must be an expression of intention so clear as to admit of no reasonable doubt.

Land may be charged with the payment of legacies either by express words, or by implication; and if by implication, it must be a fair and satisfactory inference that such was the intention of the testator.

In ascertaining the intention of the testator, when he has not charged his lands expressly with the payment of debts or legacies, we must be governed not only by the expressions of the will, but by the situation of the property disposed of, and of the person taking it.

A general residuary clause, embracing real and personal estate, where nothing but pecuniary legacies are previously given, and where of course nothing else could be taken out of the real estate so as to constitute a residue, is not to be taken as full evidence that the legacies are to be charged on the land. But it is some evidence. It is a circumstance which, taken in connexion with others, may satisfy the mind of the testator's intention.

Residuary clauses are usually introduced to prevent an intestacy as to any part of the estate, and are construed accordingly. They generally follow specific devises, and conclude the will. But when the whole of a large estate, excepting two or three pecuniary legacies, is embraced in the residuary clause, and no where else, it is fair to infer that something more was meant than a bare prevention of intestacy.

Such instances are not frequent, and when they occur may justly be considered as affording some evidence of the mind of the testator. It may be small, but it should have its weight.

The fact that the legacy is a provision for a child, one of the heirs, and not a

[Van Winkle v. Van Houten et al.]

legacy purely voluntary, as to a stranger or one having no claims of nature or kindred, is a circumstance going to show an intention to charge the legacy on the land.

So the fact, that the residuary legatees and the executors are the same persons, though not full evidence of an intention to charge the land, is a circumstance entitled to consideration in ascertaining the testator's intention.

The fact that a part of the legacy is in consideration of lands of the legatee appropriated by the testator to his own use, is of great importance in ascertaining the intention of the testator, and a strong circumstance in favor of charging the land.

Will any of the foregoing circumstances, standing alone, ascertain the intention of the testator to charge the land, with sufficient certainty to found a decree ?—*Quere.*

Where it appeared that there was a deficiency of personal assets ; that the residuary clause, though not peculiar in itself, was peculiar in reference to the dispositions of the will ; that the clause was better satisfied by charging the legacies on the real estate than by a different construction ; that it was a provision for infant heirs, and not a mere voluntary legacy ; and that the property of the legatees had been taken by the testator and mingled with his own estate to constitute a common fund for the benefit of the devisees, out of which a certain sum was to be paid to the legatees ; *held,* that the intention of the testator was, that the legacies should be paid at all events, and that they were a charge upon the land.

Upon a bill for a legacy, if the lands charged with the payment of the legacy have been partitioned and are held in severalty, and the bill seeks to charge the balance due on the legacy upon one moiety of the land, which in equity is bound to satisfy it, it is unnecessary to make the owners of the other moiety of the land parties to the bill.

BILL filed tenth of July, 1832. The bill states, that the complainant attained the age of twenty-one years on the twentieth day of May, 1828; that his father, John Van Winkle, died many years previous thereto, in the life-time of the complainant's paternal grandfather, Cornelius Van Winkle. That the said Cornelius Van Winkle, at the time of making his will, and at the time of his death, was seized and possessed of a valuable real and personal estate in the counties of Essex and Bergen, in this state. That the complainant's paternal grandmother, the wife of the said Cornelius Van Winkle, was also seized in her life-time, and at the time of her death, of a large and valuable

real estate in the county of Bergen. That upon her death, which happened in the life-time of her husband, the said Cornelius Van Winkle, the same descended to her heirs at law in such shares and portions as the law of descents then in force in this state prescribed, subject to the life estate of the said Cornelius Van Winkle, as tenant by the curtesy. That the said Cornelius Van Winkle and his wife, the grandfather and grandmother of the complainant, had four children, viz.: John, the father of the complainant, who died in the life-time of his father, leaving the complainant his only child and heir at law; Walling, who also died in the life-time of his father, leaving a son, Cornelius, his only child and heir at law, who is still living; Tiney, the wife of Adrian Van Houten, and Jane, the wife of Stephen Baker, both of whom, with their husbands, still survive.

That on the first day of January, A. D. 1814, the said Cornelius Van Winkle, the grandfather of the complainant, made and published his last will and testament, in due form of law to pass real estate, in the words following, to wit :—

"In the name of God, Amen. I, Cornelius Van Winkle, of the town of Paterson, in the county of Essex, and state of New-Jersey, finding myself advancing in the decline of years, and being in bodily health and of sound and disposing mind and memory, do make and publish this as for my last will and testament. That is to say : First, I do will and direct that all my just debts and the expenses of my funeral, be paid by my executors as soon as conveniently may be after my decease.

"Item : I do give and bequeath to my grandson, Cornelius Van Winkle, the son of my son Walling Van Winkle, deceased, the sum of one hundred and fifty dollars, to be paid to him at the expiration of each and every year after my decease, until he arrives at the full age of twenty-one years, by my executors. I do also give and bequeath to my said grandson Cornelius, if he lives to be twenty-one years of age, the sum of five thousand dollars, to be paid to him by my executors as follows: that is to say, the one half thereof in six months after he arrives to the age of twenty-

one years, and the other half thereof in one year after he arrives to the age of twenty-one years.

"Item : I give and bequeath to my grandson, John Van Winkle, the son of my son John Van Winkle, deceased, the sum of one hundred and fifty dollars annually, until he arrives at the full age of twenty-one years. The first sum to become due at the expiration of one year after my decease, and after he arrives at the age of fourteen years, which sum is to be annually applied by my executors after it becomes due, towards the education, maintenance and support of my said grandson John, until he arrives at full age, when the same is to cease. On the death of either of the above named grandchildren before he arrives at the age of twenty-one years, the annuity above given to him is to cease. Item : I do give to my said grandson, John Van Winkle, the son of my said son, John Van Winkle, deceased, if he lives to be twenty-one years of age, the sum of five thousand dollars, to be paid to him by my executors, the one half thereof in six months, and the other half thereof in twelve months, after he arrives to the full age of twenty-one years.

"Item : I do give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, wheresoever and whatsoever nature and description the same may be, to my two daughters, Tiney, the wife of Adrian Van Houten, and Jane, the wife of Stephen Baker ; to be equally divided between my said two daughters, share and share alike ; to have and to hold the same to them, their heirs and assigns, for ever.

"And whereas my wife, Anna Van Winkle, died seized of, or entitled to, a considerable real estate situate in the township of Saddle River, in the county of Bergen, which she desired should be equally divided between my two daughters above named, now my will is, that if either of my above named grandsons shall refuse to release to my said daughters, and to their heirs and assigns for ever, all his right, title and interest, of, in and to the said real estate, that is, the one moiety thereof to my daughter Tiney or her heirs, and the other moiety thereof to my daughter Jane or her heirs, if requested so to do by my executors or either of

[Van Winkle v. Van Houten et al.]

them, or by my daughters or their heirs or either of them, within six months after my said grandsons shall respectively arrive at the full age of twenty-one years; then I will that the sum of fifteen hundred dollars shall be deducted from the legacy given to such grandson as shall refuse so to release, to be taken from the first payment directed to be paid to him after he comes of age; which sum I desire shall go to my daughters, with the residuary part of my estate.

" Item: I will that in case either of my said grandsons shall die without leaving a child lawfully begotten living at the time of his death, that then and in such case the portion which I have directed to be paid to such grandson, or such part as remains unpaid, shall be equally divided between my two daughters and my surviving grandson; but if he leaves a child or children lawfully begotten, then such child or children to take it on the same condition the father did.

"And lastly, I do hereby nominate, constitute and appoint, my two sons in law, to wit, Adrian Van Houten and Stephen Baker, executors of this my last will and testament; hereby revoking all former wills by me made, and ratifying and confirming this to be my last will and testament.

" In testimony whereof, I have hereunto set my hand and seal, this first day of January, in the year of our Lord one thousand eight hundred and fourteen."

The bill further states, that after the death of the said testator, the said Adrian Van Houten and Stephen Baker, the executors therein named, proved the said will, and took upon themselves the burthen of the execution thereof; and that they, or one of them, paid and applied to the complainant's benefit, the sum of one hundred and fifty dollars annually during his minority, as directed by the said will. That some time after the complainant came of age, the said Stephen Baker paid to the complainant the sum of two thousand five hundred dollars, being the one half of the said legacy of five thousand dollars, so as aforesaid bequeathed to him; whereupon the complainant released all his right, title and interest in and to the lands and

real estate of his said grandmother, to her daughters, the said Tiney Van Houten and Jane Baker, as directed by said will; or else the complainant released to the said Jane Baker one moiety of all his right, title and interest of, in and to the said lands; or executed some writing agreeing to execute such release upon receiving the whole amount of the said legacy of five thousand dollars; and if the instrument thus executed and delivered to the said Stephen Baker, did not amount to a full and sufficient release of all his right, title and interest in and to the said lands of the complainant's grandmother, he always has been, and still is, willing and ready to execute a full and sufficient release, pursuant to the directions of the will of the said testator. That the said Adrian Van Houten paid to the complainant, in the month of December, 1828, the sum of three hundred dollars, and in the month of May, 1829, the further sum of seven hundred dollars, on account of the balance due upon the said legacy of five thousand dollars. That the complainant has never received any payments on account of the said legacy, except as herein before mentioned; and that there still remains due to him, on account of the said legacy, the sum of fifteen hundred dollars of principal, with a large amount of interest thereon.

That the said executors have paid and satisfied to the said Cornelius Van Winkle, the other legatee named in the said will, his legacy in full; and that the said Stephen Baker and Adrian Van Houten have become insolvent, and have severally taken the benefit of the insolvent laws of this state. That a large amount of the personal property of the said testator, and much more than sufficient to pay all his debts, came to their hands, as his executors, and as legatees or devisees in remainder, in right of their wives, respectively; but that the personal estate and property of the said testator, was not sufficient to pay all his debts and all the legacies given by his will; and that the complainant has no means of recovering from the said executors, or from either of them, the balance due on the said legacy; but the complainant is advised and charges, that the said legacy is a charge upon the lands and real estate of the said testator, so as aforesaid

devised by him to his daughters, the said Tiney Van Houten and Jane Baker. That the said lands and real estate are of great value, and much more than sufficient to pay the whole of the said legacies, besides the lands and real estate of the complainant's grandmother, which the testator by his will directed to be released by the complainant and the said Cornelius Van Winkle, in manner aforesaid.

The bill further states, that the said Stephen Baker and Adrian Van Houten, with their respective wives, made partition between them by mutual releases or otherwise, as well of the lands and real estate of the said testator, as of the lands and real estate of the complainant's grandmother; and that since the said partition, the said Stephen Baker and his wife have, at different times and to sundry persons, alienated or incumbered the whole of his wife's share of the said lands; but when, in what parcels, to whom, and for what considerations, is unknown to the complainant, and the said Stephen Baker refuses to discover and make the same known to the complainant. That the said Adrian Van Houten has also, at different times and to sundry persons, sold and conveyed parts and parcels of the said real estate that fell to the share of his wife, or has charged or incumbered the same by mortgages, judgments or otherwise, but to whom, when, and upon what consideration, is unknown to the complainant; except that he has heard, and believes it to be true, that on or about the eleventh day of January, 1826, the said Adrian Van Houten and Tiney his wife, executed a mortgage upon a part of the real estate of the said testator, situate at Paterson, to one John J. Ackerman, since deceased, to secure the payment of two thousand five hundred dollars; and that on or about the first day of February, 1826, the said Adrian Van Houten and wife executed another mortgage upon the same land, to one Garrabrant Van Houten, now also deceased, to secure the payment of the further sum of two thousand five hundred dollars; and also, that on or about the seventeenth day of March, 1826, the said Adrian Van Houten alone, without his wife, for the pretended consideration of ten thousand five hundred dollars,

sold and conveyed the lands covered by the aforesaid mortgages, together with other lands formerly belonging to the said testator, to the said John J. Ackerman, to have and to hold to him during the life of the said Adrian Van Houten. That the said John J. Ackerman has since died intestate, leaving Elsie Ackerman his widow, and John J. Ackerman, Peter J. Ackerman, Tiney wife of Tunis Cole, and Rachel wife of Abraham Lozier, his children and heirs at law. That the said Elsie Ackerman has administered upon his estate; and that the said Peter J. Ackerman has taken an assignment from the administrators of the said Garrabrant Van Houten, deceased, of the mortgage so as aforesaid given by the said Adrian Van Houten and wife to the said Garrabrant Van Houten; so that, as well the said mortgages as the life estate of the said Adrian Van Houten in the lands conveyed by him as aforesaid to the said John J. Ackerman, are now held and claimed by the family of the said John J. Ackerman, deceased.

The bill prays, that an account may be taken of the amount still due to the complainant upon his said legacy, and that the defendants may be decreed to pay the same, with costs, or otherwise that so much of the lands and real estate of the said testator, as was devised by him to his said daughters, as will be sufficient for the purpose, may be sold under the direction and decree of the court, to raise and satisfy what may be found due to the complainant upon the said legacy; and that the complainant may have such other relief in the premises as the nature and circumstances of the case may require, &c.

To this bill separate answers were filed by Adrian Van Houten and Tiney his wife, and by Peter J. Ackerman.

Adrian Van Houten and wife, by their answer, admit most of the material facts in the bill; and state that two thousand five hundred dollars, the one half of said legacy, was paid to the complainant by Stephen Baker, at which time the complainant fully and absolutely released the said Stephen Baker from all further claims and demands against him on account of the said will. But they deny that the complainant ever released his right, title

and interest, of, in and to the lands and real estate which were of the wife of the said Cornelius Van Winkle, to Tiney Van Houten and Jane Baker; and although he may have executed such release to the said Jane Baker, for the share to which she was entitled in severalty, yet these defendants have repeatedly applied to him for a release to the said Tiney Van Houten, in pursuance of the said will, which he wholly declined and refused to make; whereupon notice was given to the complainant, that the sum of fifteen hundred dollars, beeing the residue of the said legacy remaining unpaid, would be retained for the benefit of the said Tiney Van Houten, pursuant to the provisions of the said will. They further insist, that the execution of the said release by the complainant, was a condition precedent to the payment of the said legacy, and that having absolutely refused to execute such release to the said Tiney Van Houten, she is entitled by virtue of the said will to deduct the said sum of fifteen hundred dollars from the legacy of the complainant, and that the complainant is barred from recovering the same. They further insist, that the personal property of the testator was sufficient to pay the debts and legacies, and that the legacy of the complainant ought to be paid out of the personal estate of the testator, and is no charge upon his real estate.

Peter J. Ackerman, by his answer, insists that the mortgages upon the said land, and the sale thereof by Adrian Van Houten to John J. Ackerman, as stated in the complainant's bill of complaint, were made bona fide, for a full and valuable consideration; that the said land is not held in trust for the said Adrian Van Houten; that he is the bona fide holder, in his own right, of the said mortgages, having received the same by assignment, and also of all the right, title and interest of the said Adrian Van Houten in the land conveyed by him as aforesaid; and this defendant insists that he holds the same free and clear from any claim to be made by the complainant, and that in equity the said land is not chargeable with the payment of the said legacy, or any part thereof.

Replications to the several answers were filed, and the cause

[Van Winkle v. Van Houten et al.]

came on for hearing upon the bill, answers, replications and proofs, at a special term held at Paterson, on the eighteenth day of June, 1834.

*A. S. Pennington* and *Vanarsdale*, for complainant.

*E. B. D. Ogden* and *I. H. Williamson*, for defendants.

Cases cited by complainant's counsel. 1 *Vesey*, 436 ; 3 *Vesey*, 737, 551 ; 1 *Atkyns*, 382 ; 2 *Atkyns*, 268, 273 ; 2 *Ventris*, 228, 143 ; 2 *Dallas*, 131 ; 2 *Binney*, 525 ; 3 *Cond. Chan. R.* 714 ; 4 *Russ.* 376 ; 4 *Mad.* 187 ; 2 *Eq. Cas. Ab.* 497 ; *Jeremy's Eq.* 102–3 ; 2 *John. Chan. R.* 92 ; 3 *Vesey*, 692 ; 12 *Vesey*, 476 ; 1 *Munford*, 373.

Cases cited by defendants' counsel. 2 *John. Chan. R.* 614 ; 1 *Cond. Chan. R.* 604 ; *Sim. and Stu.* 592 ; *Toller*, 415 ; 1 *Merivale*, 216 ; 2 *Vesey*, 328 ; 5 *Vesey*, 359 ; 7 *Vesey*, 209 ; 3 *Merivale*, 310.

THE CHANCELLOR. Cornelius Van Winkle, late of Paterson, died some years ago, leaving two daughters, Tiney the wife of Adrian Van Houten, and Jane the wife of Stephen Baker ; and two grandsons, viz. Cornelius the son of Walling Van Winkle, deceased, and John (the present complainant) the son of John Van Winkle, deceased. By his last will and testament, duly executed to pass real estate, after ordering his debts and funeral expenses to be paid by his executors, he gave to each of his grandsons an annuity of one hundred and fifty dollars, until they shall attain the age of twenty-one years. He then gave to each of them five thousand dollars, the one half payable in six months, and the residue in one year, after they severally attain the age of twenty-one years. All the rest and residue of his personal and real estate, of what nature soever, he gave to his two daughters, Tiney and Jane. And as his wife, Ann Van Winkle, had died seized of a considerable real estate in Saddle

River, in the county of Bergen, which she desired should be equally divided between the two daughters, the testator directed that if either of his two grandsons should refuse to release to the said daughters, and their heirs and assigns, all his right and interest in the said real estate, if requested so to do by the executors, or the daughters or their heirs, within six months after the said grandsons should respectively attain the age of twenty-one years, then the sum of fifteen hundred dollars should be deducted from the legacy of the one so refusing, to be taken from the first payment to be made to him after he arrived at age ; which sum, thus deducted, should go to the daughters with the residuum.

The bill is filed to recover the sum of about fifteen hundred dollars, being the balance due complainant on his legacy of five thousand dollars. It states, that after the complainant came of age, Stephen Baker paid him two thousand five hundred dollars, being half the legacy, and thereupon he, the complainant, released all his interest in the lands or real estate, late of his grandmother, to the said Tiney and Jane ; or else he released to the said Jane Baker a moiety of his right and interest in the said lands ; or he executed some instrument signifying his willingness to give a release on his receiving the amount of the said legacy ; and that if the instrument does not amount to a sufficient release, he is ready and willing to execute one, according to the true intent of the will.

The bill further states, that about six months after complainant came of age, he received of Adrian Van Houten the sum of three hundred dollars, on account of the balance then due ; and some time in May, 1829, the further sum of seven hundred dollars ; since which he has received nothing either from Baker or Van Houten. That they have both become insolvent, or are reputed to be so, and the personal estate of the testator was insufficient to pay all his debts and legacies.

That the complainant is advised that the said legacy is a charge upon the lands and real estate of the said testator so devised as aforesaid to his daughters, which lands are of great val-

ne, and more than sufficient to pay the whole of the said legacies, besides the lands and real estate of the grandmother.

That Baker and Van Houten and their wives, made partition of all the real estate ; and that Baker and wife have, at different times, and to different persons, aliened or incumbered the whole of his wife's share, but when, and to whom, he refuses to discover.

That Van Houten has also, at different times, incumbered his wife's estate, or sold different parts of it. That about the eleventh of January, 1826, he and his wife gave a mortgage on part of it to John J. Ackerman, since deceased, to secure the sum of two thousand five hundred dollars ; and on the first of February, 1826, they gave another mortgage on the same lands to one Garrabrant Van Houten, now also deceased, to secure the further sum of two thousand five hundred dollars. That about the seventeenth of March, 1826, Van Houten alone, without his wife, conveyed the said mortgaged lands, together with other lands formerly belonging to the testator, to the said John J. Ackerman, to hold during the life of the said Adrian Van Houten, for the pretended consideration of ten thousand five hundred dollars. That the said John J. Ackerman has since died, intestate, leaving Elsie Ackerman his widow, (who has administered upon his estate,) and John J. Ackerman, Peter J. Ackerman, Tiney wife of Tunis Cole, and Rachel wife of Abraham Lozier, his children and heirs at law. That Peter J. Ackerman has taken an assignment from the administrators of Garrabrant Van Houten, deceased, of the mortgage given to him, so that as well both the said mortgages, as the life estate of said Van Houten, in the lands conveyed by him to the said John J. Ackerman, are now held and claimed by the family of the said John J. Ackerman, deceased.

The complainant then charges, that the executors are jointly as well as severally liable, and that for want of personal assets, or in case they have been misapplied by the executors, his legacy is a charge upon the land, and he is entitled to have the same raised and paid to him out of the same. That the conveyances

[Van Winkle v. Van Houten et al.]

have been made in fraud of the claim of the complainant, and with notice of such claim. That the sale to Ackerman was collusive and fraudulent as against the complainant, the consideration never having been paid; and that the family of Ackerman now hold the property in trust for the use of Van Houten and his wife. He prays an account, and that the defendants may be decreed to pay the sum due; or that so much of the real estate devised by the testator to his said daughters, as may be sufficient, may be sold to raise the same, and for general relief.

Van Houten and wife, in their answer, admit that Baker paid to the complainant two thousand five hundred dollars, being half the legacy; and they allege that the complainant fully released him, the said Baker, from any claims against him under the will; but they deny that he ever released his interest in the lands which were of the wife of the testator, to Tiney Van Houten and Jane Baker. That when the three hundred dollars were paid to him, and also when the seven hundred dollars were paid, they required a release, and that he refused to release until he had received the balance of the legacy, and they thereupon gave notice that they would retain the fifteen hundred dollars for the benefit of Tiney Van Houten. They insist that the tender of the release was a condition precedent, and this not having been done, the complainant is precluded.

They allege that the personal estate was sufficient to pay the debts and legacies, and admit that Van Houten and Baker are insolvent, but deny that the legacies are chargeable on the land. They admit the partition of the lands, and that Baker and wife have aliened their share. Van Houten admits the sale of all his interest in the lands to John J. Ackerman, but denies that there was any fraud or trust, and insists that the whole of the consideration, over and above the incumbrances, was fully paid to him or to his use and benefit.

Peter J. Ackerman has also answered. He insists that the sale and mortgages were bona fide, and that the land was not held in trust by his father; that he is now the bona fide owner of the said mortgages, having received them by assignment from

[Van Winkle v. Van Houten et al.]

the estate of his father. It submits that the lands are not charge-able with the legacies, or any part of them.

There are two points to be considered :—First, Whether the complainant is in a situation to make the demand set up in his bill. Secondly, Whether such demand is well founded ; or, in other words, whether the legacy claimed is a charge on the land.

As to the *first*, it presents to my mind no difficulty in the way of the complainant's recovery. He was to receive five thousand dollars, unless he refused to give a certain release within six months after he arrived at age, if requested to do so by the ex-ecutors or either of them, or by the testator's daughters or either of them. It is alleged that such request was made within the time specified, but the allegation is unsustained by proof. It was not a condition precedent, to be performed on the part of the complainant. The structure of that part of the will, and the reason of the thing, are against it. But the conduct of the ex-ecutors in relation to the payment of part of the legacy, puts the matter beyond dispute, and shows that the difficulty now raised about the release is an afterthought. About six months after the complainant became of age, Van Houten paid him three hundred dollars on account of the legacy, and nothing was said about a release ; no demand was made, no notice was given that the executors and devisees considered the tendering of a release a condition precedent, and that they would not pay unless it was given. So, too, at the expiration of a year from the time the complainant came of age, Van Houten paid him the further sum of seven hundred dollars—making one thousand dollars in the whole ; and yet there was no release called for. It is evident from these facts, that no difficulty was made about it at that time. It is too late now to set it up as a bar to the claim.

The *second* point presents a question of some interest and im-portance.

Real estate is not, ordinarily, the fund out of which legacies are to be paid. They are, as a general rule, to be satisfied out of the personal property. They may, nevertheless, be charged on the land, at the will of the testator. He may charge them

on the land, and exempt the personal estate. This is not often done, and to effect it there is required an expression of intention so clear as to admit of no reasonable doubt. Or, the testator may make his real estate liable for legacies, in case his personal property is insufficient to pay them. And this is what is generally meant by the expression, charging the land with the payment of legacies. Of this character is the charge set up by the complainant.

It may be either by express words, or by implication; and if by implication, it must be by a fair and satisfactory inference that such was the intention of the testator. This is the rule laid down by the court in *Lupton* v. *Lupton*, 2 *John. Chan. R.* 614. It was held in a late case by the vice-chancellor, (2 *Sim. and Stu.* 592; 1 *Cond. Chan. R.* 604, *Parker* v. *Fearnley*,) that in searching for the intention of the testator, we are to be confined to the will itself, without reference to the situation of the property disposed of by the will; and that the court cannot even take into consideration the amount of the personal estate, but must be governed solely by the expressions of the testator. This principle is too limited to be practically useful. Many cases have been decided on the ground that the property or fund originally chargeable has failed: *Webb* v. *Webb*, Barnard. *Rep.* 86; 2 *Eq. Cas. Ab.* 504. And when the residue of the lands out of which legacies were properly payable had failed, and there was no such residue, the court held as charged other lands, that had been specifically devised in strict settlement with remainder over. In *Lypet* v. *Carter*, 1 *Vesey*, sen. 499, the court charged the land, on the ground that without it the daughter to whom one hundred pounds had been given, would be without a provision.

In ascertaining the intention of the testator, when he has not charged his lands explicitly with the payment of debts or legacies, we must be governed not only by the expressions of the will, but the situation of the property disposed of, and the person taking it. This I understand to be the meaning of the rule adopted by the court in New York. With this rule as our

guide, let us see whether the complainant's claim can be sustained.

And first, as to the language itself. The structure of the will is simply this. It gives to the two grandchildren who represent the deceased sons of the testator, an annuity of one hundred and fifty dollars each, until they attain twenty-one years. It then gives to each of them five thousand dollars; and the rest, residue and remainder of the testator's estate, both real and personal, wheresover and of whatsoever nature and description the same may be, is given to the testator's two daughters, their heirs and assigns for ever.

It is argued on the part of the complainant, that the terms " rest, residue and remainder," apply as well to the real as the personal estate; and hence, that it is fairly to be inferred, the testator intended to charge the realty, and supposed that part of it might be necessary to satisfy the legacies; that it is not a specific devise of real estate, but a general devise of so much as may remain after some other or prior claim is satisfied out of it, and there can be no such claim but the legacies. On the contrary, it is contended for the defendants, that the general residuary clause affords no evidence of any such intention on the part of the testator.

It is said by the court in the case of *Lupton* v. *Lupton*, 2 *John. Chan. R.* 614, that the construction of the residuary clause is " perfectly well settled;" that it affords no evidence of an intention to charge lands with a pecuniary legacy. Such was the rule as laid down, but the case before the court did not call for one so broad. There had been a specific devise of land, by the testator, though the fact is not noticed in the opinion. A part of the real estate had been disposed of, so that the words " residue and remainder of my real estate," had their appropriate and strict meaning.

In order to show that the construction of the residuary clause is perfectly well settled, the case of *Keeling* v. *Brown*, 5 *Vesey*, 359, is cited; but the principle of that decision is not in point. In that case there were personal assets sufficient to pay all the

debts, as well simple contracts as specialty debts, and there was no pretence that they were charged on the real, to the exclusion of the personal property. The bill was filed by legatees, to compel the marshalling of the assets and throw the specialty debts on the land, that the legacies might be paid out of the personalty. It did not claim that the legacies were charged on the real estate. It was very clear, that the debts were not so charged while there was personal property to pay them, and that there was a sufficiency of personal property was not denied. The court was asked to marshal the assets in favor of legatees. According to the opinion held by the master of the rolls, who decided this case, there is a wide difference between debts and legacies. They do not stand on the same foot, as regards charging land. The debts are preferred, and consequently were to be first paid. The claims of the creditors were of different grades, and whether the land was or was not a subsidiary fund for the payment of debts, was immaterial, for in neither case were the legatees entitled to have the assets marshalled. If there had not been personal assets enough to pay the debts, the court would have marshalled the assets in favor of the simple contract creditors, and thrown the specialty debts on the land. That was admitted by all. The point of the case, then, if I understand it, was, not whether the legacies were charged on the land, but whether the specialty debts should be thrown on the land in favor of the legatees, there being personal assets enough to pay all the debts, but not enough to pay the legacies. By such operation, the legacies might have been satisfied out of the personal estate.

In another point the case was dissimilar from the present. There were several specific devises of real estate, before the residuary devise, and consequently there was something for the residuary clause to operate upon, without inferring that the testator supposed a part of the real estate would be needed to pay the debts or legacies.

Until lately, the question has not been distinctly raised in the English chancery, whether a general residuary clause, embracing real and personal estate, will have any effect to charge real estate

with the payment of legacies, where nothing but pecuniary legacies were previously given, and where, of course, nothing else could be taken out of the real estate, so as to constitute a residue. The case of *Hassell* v. *Hassell*, *Dick.* 527, was like the present, so far as this question is concerned; and it was held that the legacies were charged on the real estate in aid of the personal; but as the executor and the residuary devisee were the same person, and some of the expressions used by the testator were rather peculiar, apparently indicating some intention to charge the land, and as the court gave no reasons for its judgment, it is impossible to ascertain the principle on which it was founded.

So in *Awbry* v. *Middleton*, 2 *Eq. Cas. Ab.* 497, there were pecuniary legacies, and then a general residuary clause, embracing real and personal estate; and the court held the land charged, but apparently on the ground that the devisee was also executor and heir at law.

Many other similar cases might be referred to, but in all of them, the point, when raised, was blended with other matters, and did not receive a distinct consideration.

In the late case of *Cole* v. *Turner*, 4 *Russ.* 376; 3 *Cond. Eq. Rep.* 714, it was more singly presented than in any adjudication I have met with. The testator gave his wife two hundred pounds, and an annuity of two hundred and fifty pounds during her life; also, fifty pounds a year for the education and maintenance of his children, and two thousand pounds for each child on his attaining the age of twenty-one years. He then gave, devised and bequeathed the rest, residue and remainder of his freehold, copyhold and leasehold estates, all his stock, utensils, farming implements, and the rest of his real and personal property, to his executors, in trust for his four children, and appointed two of his sons and two strangers executors. The question was, whether the annuities and the pecuniary legacies given prior to the devise to the trustees, were or were not a charge upon the freehold, copyhold and leasehold estates comprised in that devise. And it was argued expressly on the point, that the words of the residuary clause necessarily imply that something was to be

[Van Winkle v. Van Houten et al.]

taken out of the freehold, leasehold and copyhold estates, and there was nothing that could be taken from the mass, but these legacies. The master of the rolls said, these estates are not devised to the trustees, but the rest and residue of them; that is, what remains after some prior purpose is satisfied; and that prior purpose can only be the satisfaction of the annuity and the legacies. They were accordingly held to be well charged on the real estates. This case is entitled to respectful consideration.

I am not, however, by this single decision, and some others that are partially analagous to it, led to the conclusion that the residuary clause is, under like circumstances, to be taken as full evidence that the legacies are to be charged on the land. This would be going too far. But it is some evidence. It is a circumstance which, taken in connection with others, may satisfy the mind of the testator's intention.

These residuary clauses are usually introduced to prevent an intestacy as to any part of the estate, and are construed accordingly. They generally follow specific devises, and conclude the will. But when the whole of a large estate, excepting two or three pecuniary legacies, is embraced in the residuary clause, and no where else, it is fair to infer that something more was meant than a bare prevention of intestacy. Such instances are not frequent; and when they occur, may justly be considered as affording some evidence of the mind of the testator. It may be small, but it should have its weight. In this case I think it justly entitled to consideration.

*Secondly :* Another matter appearing on the face of the will, is, that the legacy was a provision for a child, one of the heirs; differing therein from a legacy purely voluntary, as to a stranger, or one having no claims of nature or kindred.

In *Lypet* v. *Carter*, already cited, it was said, that courts had, in questions of this nature, gone a great way in endeavoring to perform the will. It was the case of a child, who was, in the opinion of the court, equally entitled with others, to a provision by the father. And it being doubtful from the express words of the will, whether the testator intended to charge the

land, the court made that circumstance the ground of it's judgment. " It seems to be the intent of the testator," says sir John Strange, sitting at the rolls, " to provide effectually for every branch of his family ; and if the lands are not held chargeable, it is admitted, the complainant must go without a provision."

So in *Webb* v. *Webb, Barnard. Rep.* 86 ; 2 *Eq. Cas. Ab.* 504, the court charged the real estate, under pretty strong circumstances against such charge, on the ground that the legacies were portions for younger children ; and held, that they were to be considered as creditors in a court of equity, and not put on the footing of ordinary legatees.

And again, in *Elliott* v. *Hancock*, 2 *Vern.* 143, real estate was held charged with a legacy, without any express words in the will ; " the rather, because it was all the provision that was made for the heir that was disinherited."

In all these cases there is equity and good sense, and they commend themselves strongly to the conscience of every court.

*Thirdly :* There are a number of authorities to show, that where the residuary devisees and the executors are the same persons, the land will be considered charged ; for in all such cases the executors have it in their power to fulfil the intentions of the testator, if the personal assets prove insufficient. This doctrine has been somewhat shaken by a late decision of sir John Leach, vice-chancellor, in *Parker* v. *Fearnley*, 2 *Sim. and Stu.* 592 ; 1 *Cond. Chan. R.* 604 ; but the principle appears to be sustained in the older authorities.

The executors, in the case before the court, are not devisees, but their wives are ; and they took a beneficial interest in the property, which they might have disposed of. There is a strong analogy between this and the cases referred to. And although I am very far from considering it full evidence of intention, yet I think it right to notice it, that it may have such weight as it may deserve.

*Fourthly :* What appears to me of greatest importance in ascertaining the intention of the testator, is the fact, that at least a part of the legacy is in consideration of lands of the legatee

appropriated by the testator to his own use. It seems that the wife of the testator died seized of considerable real property, and that either by sale in the life-time of the testator, or by his will, the whole was disposed of, and thus was included in the residuum of the estate for the benefit of the two daughters and their husbands. The testator being only tenant by the curtesy, had no right to dispose of these lands in fee. He, nevertheless, did make such disposition of them, and required that the grandchildren to whom they rightfully belonged after the termination of the life estate, should release their interest in them to the daughters. On failure or refusal thus to release, they were to forfeit a large proportion of their legacies.

These facts present a very strong claim as against the testator and against these devisees. This provision in the will was for the interest of the devisees, the daughters. They, as well as their husbands, had a right to call for the release. The testator fully intended they should have that property, and, I think, he fully intended that the grandchildren should be compensated for it out of his own estate.

As to a part of it, the claim is stronger, to my mind, than that of an absolute debt; and from the whole language of the will, taken in connection with the dispositions made in it and the situation of the parties, I am satisfied he intended that part should be paid at all events. A different construction would be unjust to the legatees, and still more unjust to the memory of the testator. As to the other part the intention is not so clear; but when it is seen that the testator took the property of these legatees, and mingled it with his own, constituting thereby one general fund, and gave the whole of it as one property to his daughters, excepting thereout the sum of ten thousand dollars to his grandsons, (five thousand dollars to each,) and that it is given as one legacy, I am strongly inclined, on this point, to believe the intention of the testator was, that they should have the whole of their legacies out of the estate, (if they chose to fulfill the will by executing the necessary releases,) and of course that the land is charged in the hands of the devisees.

[Van Winkle v. Van Houten et al.]

I am not prepared to say that any one of the circumstances referred to as indicating the intention of the testator, would, if standing alone, ascertain it with sufficient certainty to found a decree. But when I see that there is a deficiency of personal assets ; that there is a residuary clause, not peculiar in itself, but peculiar in reference to the dispositions of this will ; that this clause is better satisfied by charging these legacies on the real estate than by a different construction ; that it was a provision for infants, and not a common voluntary legacy ; and that the property of these legatees has been taken by the testator and mingled with his own estate, to constitute a common fund for the benefit of the devisees, out of which a certain sum is to be paid to these legatees ; I feel justified in concluding that the intention of the testator was, that they should be paid at all events ; and I shall decree accordingly.

Many rules have been adopted by courts for the construction of wills. In general they are salutary and ought to be observed, although sometimes working injustice. But the great rule which rides over all others is, that the intention of the testator is to govern. That intention is to be gathered, as has already been seen, not from speculations and conjectures, but from the will itself, and its various dispositions, connected with the situation of the property disposed of, and the persons taking. If, after an anxious investigation, guided by a sincere desire to discover that intention from these sources, a conclusion is found, it is satisfactory to believe, as I do in the present case, that it accords with what appears to be just and equitable as between all parties interested.

It was objected at the hearing, that the proper parties were not before the court, inasmuch as the assignees of Baker and wife were not made parties to the bill.

I think the objection ought not to prevail. If the complainant has released to Baker and wife on payment of their proportion, he needs no decree against their assignees. No more is sought from Van Houten and wife, or their assignees, than the proportion due from the moiety of the lands in their possession. If he sought

25

[Van Winkle v. Van Houten et al.]

to recover more than this, the representatives of the other share of the land should be before the court.

There has been a division of the land, and one part has paid its share. Those holding that part, if brought in, would have a right to throw the burden on the other part. And if the complainant does this without the direction of the court, and no allegation is made that the other share is bound to contribute, there is no good reason why the owners of that share should be brought in to increase the expense. They are in no way affected by the decree.

It is accordingly declared, that the share of the real estate of the testator, which in the division made by the devisees was assigned to Van Houten and wife, is charged with the payment of the balance of the legacy now due, in whose hands soever the said lands may now be. And it is decreed that it be referred to a master to take an account of the balance due; and that, upon a proper release being executed according to the will, the defendants pay the amount due in a given time, and in default thereof that it be raised by sale.

This does not appear to be a case for costs.

————

The following decree was thereupon made :—

" This cause coming on to be heard, &c. and it appearing to the satisfaction of the chancellor, by the pleadings, proofs and exhibits made and taken in this cause, that Cornelius Van Winkle made and executed his last will and testament, in the complainant's bill set forth or referred to, in manner and form sufficient to pass real estate in New-Jersey, and departed this life without altering or revoking the same; leaving two daughters, Tiney the wife of Adrian Van Houten, and Jane the wife of Stephen Baker; and two grandsons, Cornelius the son of Walling Van Winkle, deceased, and the complainant the son of John Van Winkle, deceased: that in and by said will he gave to each of

his said grandsons an annuity of one hundred and fifty dollars until they should attain the age of twenty-one years, and to each of them the sum of five thousand dollars, one half thereof to be paid in six months, and the residue in one year after they should severally arrive at the age of twenty-one years; and he then gave all the rest, residue and remainder of his personal and real estate to his two daughters, Tiney and Jane. That as his wife, Ann Van Winkle, had died seized of a considerable real estate in Saddle River, in the county of Bergen, which she desired should be equally divided between the two daughters, the testator directed that if either of his two grandsons should refuse to release to the said daughters and their heirs and assigns, all his right and interest in the said real estate, if requested so to do by the executors or the daughters or their heirs, within six months after the said grandsons should respectively attain the age of twenty-one years, then the sum of fifteen hundred dollars should be deducted from the legacy of the one so refusing, to be taken from the first payment to be made to him after he arrived at age; which sum deducted was to go to the daughters with the residuum of his the said testator's estate; and did appoint the said Adrian Van Houten and Stephen Baker executors of said will. That the said executors proved the same, and took upon themselves the burthen of the due execution thereof. That the said executors are insolvent, or reputed to be so. That after the death of the said Cornelius Van Winkle, the said Adrian Van Houten and Tiney his wife, and the said Stephen Baker and Jane his wife, made partition of a large and valuable real estate, devised as aforesaid to the said Tiney and Jane; and that the said Adrian Van Houten and Tiney his wife, have aliened or incumbered their estate so devised, or some part thereof. And it further appearing that the said complainant, more than one year before filing his bill in this cause, arrived at the age of twenty-one years, and that the said Stephen Baker has paid to the complainant twenty-five hundred dollars, being one equal half part of said legacy; and that there is a considerable sum of money due to the said complainant on account of his said legacy; and that the complainant has

executed a release to the said Jane Baker for her share of said lands, or has otherwise satisfied her therefor.   And it further appearing that there is due to the said complainant a considerable balance, including interest, on his said legacy of five thousand dollars, and that the said Adrian Van Houten is insolvent, and there is no personal estate of the said testator to pay and satisfy the said complainant the balance due to him on said legacy; that it does not appear that either the said executors or the said Tiney Van Houten did, within six months from the time specified in the said will, after the complainant arrived at full age, request the complainant to execute such release to the said Tiney Van Houten, for the said lands in the township of Saddle River, as in the said will is mentioned.   The chancellor is of opinion, and doth declare, that the release directed by the will to be made to the said Tiney Van Houten, is not a condition precedent to be performed on the part of the complainant, and that the sum of fifteen hundred dollars, part of said legacy, does not sink into the residuum of said estate, but that the complainant ought to recover the balance, with interest, of the said legacy of five thousand dollars, devised to him as aforesaid, which remains unpaid, and ought also to execute such release to the said Tiney Van Houten as is directed by said will.   And the chancellor is also of opinion, and doth declare, that neither the said Stephen Baker and Jane his wife, or their assigns, ought to be made parties in this suit, as they are no way affected by this decree.   And it further appearing to the chancellor that the said legacy was a provision for a grandchild of the testator, and one of his heirs; and that the said executors in the said will named, were the husbands of the testator's daughters, who were the devisees of the real estate of the said testator, and derived a benefit therefrom.   That a part of said legacy was in consideration of lands of the said complainant to be released, which were appropriated by the said testator for his own use, and for the interest of his said daughters.   That from the property of the said testator left at his death, the words of his said will, and circumstances of this case, the chancellor is of opinion, and doth de-

clare, that it was the intention of the testator, Cornelius Van Winkle, to charge his lands and real estate with the payment of the said legacy of five thousand dollars, bequeathed and given to the complainant as aforesaid; and that the share of the real estate of the said testator devised as aforesaid to his said daughter Tiney, and which in the partition aforesaid was allotted and assigned to the said Adrian Van Houten and Tiney his wife, was and now is charged with the payment of the balance of principal and interest of the said legacy, due to the said complainant as aforesaid, in whose hands soever the said lands and real estate may be; and that the said balance ought to be raised by a sale of so much of the said lands and real estate charged as aforesaid, as shall be sufficient for that purpose. It is accordingly, on this thirtieth day of October, in the year of our Lord one thousand eight hundred and thirty-four, by his excellency Peter D. Vroom, governor and chancellor, ordered, adjudged and decreed, and the said chancellor doth, by virtue of the power and authority of this court, order, adjudge and decree, that the complainant is entitled to relief, and the aid of this court, to recover and receive payment and satisfaction for the balance of principal and interest due and growing due on the legacy of five thousand dollars given to him as aforesaid in the will of the said testator; and that the balance of the said legacy, with interest, due to the complainant as aforesaid, is a charge and is charged upon the share of the real estate of the testator, Cornelius Van Winkle, which in the division made by the devisees as aforesaid, was assigned to the said Adrian Van Houten and Tiney his wife, in whose hands soever the same may be, and ought to be raised by a sale of so much thereof as is necessary for that purpose; and that it be referred to Philemon Dickerson, esquire, one of the masters of this court, to take an account of the balance of the said legacy, with interest, due and owing to the complainant, and fix a day for the payment thereof; and that the complainant execute a proper release to the said Tiney Van Houten, of his interest in the said lands in the township of Saddle River, according to the will of the said testator, to be approved of by the said master, and

leave the same with the said master, subject to the further order of this court. That the said master make his report with all convenient speed; and that upon the coming in of the said master's report, the amount which shall be found due by the said master to the complainant, is directed to be paid to him or to his solicitor, according to the said master's report; and in default thereof, that a sale be made of the lands and real estate charged with the payment of the sum due to the complainant as aforesaid, or so much thereof as shall be necessary, according to the further order and decree of this court. And all further equity and directions, and the question of costs, are reserved until the coming in of the said master's report, for the further order and decree of this court."